## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

PHIL MIRANDA LUNA,

      Petitioner,

v.                                   Case No. 8:20-cv-415-WFJ-AAS

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## ORDER

Phil Miranda Luna, a Florida prisoner, timely filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 and a supporting memorandum. (Docs. 1, 1-1.) Respondent filed a response opposing the petition. (Doc. 11.) Mr. Luna filed a reply. (Doc. 15.) Upon consideration, the petition is **DENIED**.

## I.    Procedural History

A state-court jury convicted Mr. Luna of attempted sexual battery on a child under twelve years old and traveling to meet a minor. (Doc. 12-1, Ex. 27.) The state trial court sentenced him to concurrent terms of seventeen years' imprisonment for the attempted-sexual-battery count and fifteen years' imprisonment for the traveling-to-meet-a-minor count. (*Id.*, Ex. 36.) The state appellate court *per curiam* affirmed the convictions and sentences. (*Id.*, Ex. 42.) Mr. Luna subsequently filed a petition for writ

1

of certiorari with the United States Supreme Court. (*Id.*, Ex. 47.) The Supreme Court denied review. (*Id.*, Ex. 49.) This federal habeas petition followed. (Doc. 1.)

## II.   Facts; Trial Testimony

This case arises from an online sting operation conducted by the Central Florida Internet Crimes Against Children Task Force. On June 2, 2012, a detective assigned to the Task Force posted an advertisement in the "casual encounters" section of Craigslist. The advertisement was titled "whats happening—w4m (orlando)."[1] (Doc. 12-1, Ex. 29, p. 654.) It contained a picture of a flower and stated, "here on vaca. looking to see whats happen in the area." (*Id.*)

Mr. Luna responded to the advertisement about an hour after it was posted. He explained that he would be in the area that week, described himself as "a handsome older Latino in [his] late 40s," and asked if the poster (who went by the name "Jessica W") "[w]anted to get together and have some fun." (*Id.*, p. 655.) Mr. Luna also stated, "We all have needs—including physical needs, desires, urges, temptations, and fantasies." (*Id.*) The next afternoon, Mr. Luna received the following response: "Hey there, My 11 year old daughter (Holly) and I are here on vacation. We are going to be here for about a week. We are staying in the disney area. I am looking for some 'fun' for Holly that Disney cant provide. Are you interested?" (*Id.*, p. 656.)

Mr. Luna asked Jessica what she "ha[d] in mind"; he also asked whether she was "with law enforcement." (*Id.*, p. 657.) Jessica said she was "not a cop." (*Id.*) She

---

[1] At trial, the detective testified that "w4m" referred to "[a] female looking for a male." (Doc. 12-3, Ex. 62, p. 426.)

2

then explained that she was "looking for someone who could help teach holly some things. She is SUPER curious about everything." (*Id.*) After clarifying with Jessica that she was Holly's mother, Mr. Luna asked: "so what do you have in mind to help her with her CURIOUSITY." (*Id.*, p. 658.) Jessica said it "would be up to [him]," but that she was "looking for someone to help bring her into womanhood." (*Id.*) The two exchanged several more messages; in one of them, Mr. Luna explained that he had "trepidations" because he "had a family relative that got involved with an under age girl; they were both ok with it. But once the authorities found out about it, he went to jail and it ruined his life and affected the lives of everyone around him." (*Id.*, p. 661.)

Mr. Luna and Jessica ultimately agreed that he would meet her and Holly at their "vacation home" in Polk County, Florida. (*Id.*, pp. 661, 666.) Mr. Luna confirmed with Jessica that he would teach Holly several sex positions. Jessica then suggested that she, Holly, and Mr. Luna talk on the phone before meeting up. (*Id.*, p. 666.) During the phone conversation, Mr. Luna told Jessica that he was "being so cautious and asking so many questions" because the "consequences" would be "so devastating for either one of [them] if it [went in] the wrong direction." (Doc. 12-3, Ex. 62, p. 460.) Mr. Luna also spoke with a detective pretending to be Holly. He told Holly that he would "walk [her] through" several sex positions. (*Id.*, pp. 465-67.) He also confirmed with Holly that Jessica would not be "in the same room" with them. (*Id.*, pp. 468-69.)

Later that night, Mr. Luna drove from his hotel on Merritt Island to the "vacation home." On the way, he picked up Skittles and condoms. Police arrested Mr. Luna when he arrived at the house.

At trial, Mr. Luna testified that he believed Jessica wanted to "do some role playing to fulfill her fantasy," that he never intended to have sex with an eleven-year-old, and that he thought Holly was "[t]he adult that posted the ad, the person named Jessica." (Doc. 12-4, Ex. 64, pp. 859, 862.) He also testified that he never had sexual contact with a child, and that he never had "any desire to have sex[ual] relations with a minor." (*Id.*, p. 841.)

## III.    Standards of Review

### A.    AEDPA

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can be granted only if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694; *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The state appellate court affirmed Mr. Luna's convictions and sentences without discussion. This decision warrants deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002). When a state appellate court

issues a silent affirmance, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

### B.     Exhaustion of State Remedies; Procedural Default

A federal habeas petitioner must exhaust his claims in state court before presenting them in his federal habeas petition. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). The exhaustion requirement is satisfied if the petitioner fairly presents his claim in each appropriate state court and alerts that court to the federal nature of the claim. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor

external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). A petitioner demonstrates prejudice by showing that "there is at least a reasonable probability that the result of the proceeding would have been different" absent the constitutional violation. *Henderson*, 353 F.3d at 892.

## IV.    Discussion

### A.    Facial Sufficiency of Petition

As an initial matter, Respondent contends that the petition is "facially insufficient" because it was signed only by Mr. Luna's counsel. (Doc. 11, p. 24.) This argument lacks merit. A federal habeas petition may be signed and verified "by someone acting in [the petitioner's] behalf." 28 U.S.C. § 2242. This means that "a habeas petitioner's attorney can sign and verify the petition for the petitioner." *Lucky v. Calderon*, 86 F.3d 923, 925 (9th Cir. 1996); *see also* Brian R. Means, *Postconviction Remedies* § 9:5 (2022) ("Of course, the prisoner may sign and verify the petition himself. But the language of the statute also contemplates that counsel for the prisoner may sign and verify the petition on behalf of the prisoner."). Because there is no indication that Mr. Luna did not consent to the filing of the petition, the absence of his signature does not render it facially insufficient. *See Lucky*, 86 F.3d at 925 ("In the absence of evidence to the contrary, there is a presumption that a petitioner has been fully informed of, and has consented to, claims raised in the petition.").

**B.     Ground One**

Mr. Luna contends that the trial court violated his federal due process and equal protection rights by denying his request for a jury instruction on entrapment.[2] As noted above, Mr. Luna testified at trial that he never believed "Holly" was a child. The trial court ultimately declined to give an entrapment instruction because Mr. Luna's "theory of defense [was] that he didn't commit the crimes charged." (Doc. 12-4, Ex. 64, p. 944.) In support, the trial court cited *Seo v. State*, which held that a defendant in a similar online sting case was not entitled to an entrapment instruction because he "testified under oath that he did not believe that the person being portrayed by the undercover officers was actually a child." *Seo v. State*, 143 So. 3d 1189, 1190 n.1 (Fla. 1st DCA 2014), *decision quashed on other grounds*, 2016 WL 1700522 (Fla. Apr. 28, 2016). According to Mr. Luna, the failure to give an entrapment instruction "deprived him of his theory of defense" and "unduly burdened his right to testify in his own defense." (Doc. 1-1, p. 22.)

Respondent correctly contends that Mr. Luna failed to exhaust this claim. Proper exhaustion requires a petitioner to "make the state court aware that the claims asserted present federal constitutional issues." *Jimenez v. Fla. Dep't of Corr.*, 481 F.3d 1337, 1342 (11th Cir. 2007). "A litigant wishing to raise a federal issue can easily

---

[2] To establish subjective entrapment under Florida law, a "defendant must show, by a preponderance of the evidence, that a government agent induced him or her to commit the offense and that he or she was not predisposed to do so. The burden then shifts to the State to rebut this with evidence beyond a reasonable doubt." *Baeza v. State*, 351 So. 3d 167, 170 (Fla. 2d DCA 2022). Subject to "limited exceptions," however, "a defendant who denies committing the crime cannot claim entrapment as a defense." *State v. Freeman*, 796 So. 2d 574, 577 (Fla. 2d DCA 2001).

indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). A petitioner must do more, however, than "scatter some makeshift needles in the haystack of the state court record." *McNair v. Campbell*, 416 F.3d 1291, 1303 (11th Cir. 2005). Moreover, a petitioner "does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief" to find the "federal claim." *Baldwin*, 541 U.S. at 32.

Mr. Luna failed to squarely present his federal constitutional claim on direct appeal. In his initial brief, Mr. Luna argued that the trial court "erroneously refused to give Florida's standard jury instruction on entrapment." (Doc. 12-1, Ex. 39, p. 33.) But he did not argue that the denial of the instruction violated his right to due process or equal protection under the federal constitution. Instead, Mr. Luna claimed that he was entitled to the instruction as a matter of Florida law. And while Mr. Luna cited *Mathews v. United States*, 485 U.S. 58 (1988), that decision merely interpreted the federal common law of entrapment. It did not rest on due process or any other federal constitutional principle. *See Keahey v. Marquis*, 978 F.3d 474, 480-81 (6th Cir. 2020) (noting that "*Mathews* is not a constitutional case"). Thus, Mr. Luna failed to "make the state court aware that the claim[] [he] asserted present[ed] federal constitutional issues." *Jimenez*, 481 F.3d at 1342.[3]

---

[3] In his reply brief on direct appeal, Mr. Luna argued that "[a]t best [*Seo*] represents a split in the districts; at worst it represents a denial of due process." (Doc. 12-1, Ex. 41, p. 8.) But under Florida

Mr. Luna cannot return to state court to present his unexhausted claim in a second, untimely direct appeal. *See* Fla. R. App. P. 9.140(b)(3) (stating that a notice of appeal must be filed within thirty days of the rendition of a sentence). As a result, Ground One is procedurally defaulted. *See Smith*, 256 F.3d at 1138 ("If the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established."). And because Mr. Luna has not shown that an exception applies to overcome the default, Ground One is barred from federal habeas review.

Even if Mr. Luna had exhausted this claim, he would not be entitled to relief. Mr. Luna contends that the trial court misread Florida law when it denied an entrapment instruction. He relies primarily on *Wilson v. State*, which held that an entrapment instruction that is supported by the evidence "should be refused only if the defendant has denied under oath the *acts* constituting the crime that is charged." *Wilson v. State*, 577 So. 2d 1300, 1302 (Fla. 1991) (emphasis added). According to Mr. Luna, he never denied committing the "acts . . . of which he was accused." (Doc. 1-1, p. 25.) Instead, he merely denied having the "mental state" required for the charged offenses.

---

law, arguments raised for the first time in a reply brief are waived. *See State v. Dougan*, 202 So. 3d 363, 378 (Fla. 2016) ("The State raises this argument for the first time in its Reply Brief in this Court, so it is waived."). Thus, the reference to due process in Mr. Luna's reply brief was insufficient to properly exhaust his claim. *See Atwater v. Crosby*, 451 F.3d 799, 810 (11th Cir. 2006) (holding that petitioner "did not properly exhaust [] claim in state court" because he "asserted the issue" for the first time "in his reply brief").

(*Id.*, pp. 25-26.) Thus, Mr. Luna contends, he "carried his burden under Florida law and was entitled to an entrapment instruction." (*Id.*, p. 22.) Even if Mr. Luna were correct on this point, it would make no difference, because "[f]ederal habeas relief is unavailable for errors of state law." *Jamerson v. Sec'y for Dep't of Corr.*, 410 F.3d 682, 688 (11th Cir. 2005) (noting that "[a] jury instruction that was allegedly incorrect under state law is not a basis for habeas relief, because federal habeas review is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States").

To prevail on this claim, Mr. Luna must show that the denial of the entrapment instruction was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Mr. Luna has not met his burden. "'[C]learly established Federal law' for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014). Accordingly, "it is not 'an unreasonable application of' 'clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009); *see also Reese v. Sec'y, Fla. Dep't of Corr.*, 675 F.3d 1277, 1288 (11th Cir. 2012) ("The Supreme Court has reiterated, time and again, that, in the absence of a clear answer—that is, a holding by the Supreme Court—about an issue of federal law, we cannot say that a decision of a state court about that unsettled issue was an unreasonable application of clearly established federal law.").

11

The Supreme Court has never "squarely established" a federal constitutional right to an entrapment instruction. *Knowles*, 556 U.S. at 122. To the contrary, the Court has long recognized that the entrapment defense "is not of a constitutional dimension." *United States v. Russell*, 411 U.S. 423, 433 (1973).[4] *Mathews* did not hold otherwise. There, the Supreme Court ruled that "even if [a] defendant denies one or more elements of the crime, he is entitled to an entrapment instruction whenever there is sufficient evidence from which a reasonable jury could find entrapment." *Mathews*, 485 U.S. at 62. But, as noted above, *Mathews* was not decided on constitutional grounds. *See Bueno v. Hallahan*, 988 F.2d 86, 88 (9th Cir. 1993) (noting that the "holding" in *Mathews* was "not compelled by the Constitution"). Rather, *Mathews* relied on the "federal common law" to clarify the entrapment defense applicable to federal criminal defendants. *Keahey*, 978 F.3d at 481.

Because the Supreme Court's "cases give no clear answer to the question presented, let alone one in [Mr. Luna's] favor, it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Wright v. Van Patten*, 552 U.S. 120, 126 (2008). Thus, Mr. Luna is not entitled to relief on Ground One.

---

[4] *See also Ainsworth v. Reed*, 542 F.2d 243, 244 (5th Cir. 1976) ("Entrapment is not a constitutional doctrine. Rather it is a court-created limitation on governmental activity."); *Sairras v. Fla. Dep't of Corr.*, 496 F. App'x 28, 35 (11th Cir. 2012) ("It is well-settled that the defense of entrapment is not of constitutional dimension."); *Sosa v. Jones*, 389 F.3d 644, 645 (6th Cir. 2004) (noting that "the Supreme Court has not yet recognized a constitutionally required entrapment defense").

### C.     Ground Two

Mr. Luna contends that the trial court violated his federal due process rights by "excluding evidence that was relevant and necessary to [his] defense of entrapment." (Doc. 1-1, p. 33.) Specifically, the trial court excluded (1) a computer expert's testimony that Mr. Luna did not have any child pornography on his laptop or cellphones, and (2) a proposed "psychosexual examination" of Mr. Luna, which would show that he had "no sexual interest in children." (*Id.*, pp. 10, 34-35.) According to Mr. Luna, the excluded evidence was relevant to show that law enforcement induced him to commit the charged offenses and that he was not predisposed to do so.

Respondent is correct that Mr. Luna failed to exhaust this claim. On direct appeal, Mr. Luna challenged the exclusion of the computer expert's testimony. But he did not argue that this evidentiary ruling violated due process. Instead, citing Florida law on entrapment, Mr. Luna argued that the expert testimony was relevant because the "absence of [child pornography] on a computer speaks to an absence of [] intent or predisposition." (Doc. 12-1, Ex. 39, pp. 40-42.) As to the psychosexual examination, Mr. Luna argued on direct appeal that such an examination could be "compelling evidence as to whether a defendant had a sexual attraction to children and, thus, whether the defendant was predisposed to exploit [a] child." (*Id.*, p. 44.) Mr. Luna also claimed that "due process" required admission of the evaluation, but he did not assert a violation of his *federal* due process rights. (*Id.*; *see also Zeigler v. Crosby*, 345 F.3d 1300, 1308 n.5 (11th Cir. 2003) (allegation that petitioner "was denied due process and a fair trial" was insufficient to properly exhaust federal constitutional claim because "this

language could just be asserting a fair trial claim under the Florida Constitution and Florida's Due Process Clause").) Accordingly, Mr. Luna failed "to afford the state courts a meaningful opportunity to consider" his federal constitutional claim. *McNair*, 416 F.3d at 1302.[5]

Mr. Luna cannot return to state court to present his unexhausted claim in a second, untimely direct appeal. As a result, Ground Two is procedurally defaulted. And because Mr. Luna has not shown that an exception applies to overcome the default, Ground Two is barred from federal habeas review.

Even if Mr. Luna had exhausted this claim, he would not be entitled to relief. "[F]ederal courts will not generally review state trial courts' evidentiary determinations." *Taylor v. Sec'y, Fla. Dep't of Corr.*, 760 F.3d 1284, 1295 (11th Cir. 2014). "Indeed, in a habeas corpus action brought by a state prisoner, [the court's] authority is severely restricted in the review of state evidentiary rulings." *Id.* "Habeas relief is warranted only when the error so infused the trial with unfairness as to deny due process of law." *Id.*; *see also Mills v. Singletary*, 161 F.3d 1273, 1289 (11th Cir. 1998) ("We will not grant federal habeas corpus relief based on an evidentiary ruling unless the ruling affects the fundamental fairness of the trial."). "Fundamental fairness is

---

[5] Mr. Luna's citation to *McKibbins v. United States*, No. 12 C 9841, 2013 WL 5550124 (N.D. Ill. Oct. 3, 2013), was insufficient to exhaust his due process claim. That decision concerned an ineffective-assistance claim based on counsel's alleged failure "to introduce evidence of a psychosexual evaluation performed on petitioner in which the psychiatrist concluded that petitioner was not a pedophile." *Id.* at *2. *McKibbins* did not address whether the exclusion of such evidence would violate due process.

violated when the evidence excluded is material in the sense of a crucial, critical, highly significant factor." *Demps v. Wainwright*, 805 F.2d 1426, 1430 (11th Cir. 1986).

Mr. Luna has not shown that the challenged evidentiary rulings "so infused the trial with unfairness as to deny due process of law." *Taylor*, 760 F.3d at 1295. The trial court excluded the proposed psychosexual examination on the grounds that it was inadmissible character evidence. (Doc. 12-1, Ex. 17.) In support, the trial court cited *Wyatt v. State*, which upheld the exclusion of "expert testimony that the defendant d[id] not fit the profile of a pedophile." 578 So. 2d 811, 813 (Fla. 3d DCA 1991). *Wyatt* explained that, because Florida law "does not permit evidence of character to be made by opinion," a defendant in a sexual-battery case could not "introduce evidence of his character through the expert opinion of a psychologist." *Id.* Accordingly, the trial court did not act unreasonably in excluding the proposed psychosexual evaluation.

Nor did the trial court act unreasonably in excluding the computer expert's testimony. The trial court noted "that this witness could only testify as to the lack of child pornography on the computer and phones." (Doc. 12-1, Ex. 26, p. 4.) It excluded the evidence because (1) there was no indication that the expert "would be able to testify as an expert witness on one's predisposition to commit a capital sexual battery based upon a lack of child pornography found on a computer and cellphones"; and (2) "'not possessing' child pornography [does not] show[] a lack of predisposition to commit a capital sexual battery on an 11 year old." (*Id.*) Mr. Luna has not shown that the exclusion of this evidence rendered the trial fundamentally unfair. *Cf. State v. Kinley*, No. 79179-6-I, 2020 WL 4462651, at *7 (Wash. Ct. App. Aug. 3, 2020)

(rejecting argument that "the absence of child pornography on [defendant's] phone is relevant to show his lack of lustful disposition towards children").

Moreover, Mr. Luna was "given a 'fair opportunity' to present other critical evidence in support of his defense" that he lacked predisposition to commit the charged offenses. *Taylor*, 760 F.3d at 1296. At trial, Mr. Luna testified that he never had sexual contact with a minor, and that he never "had the desire to have sex with a child." (Doc. 12-4, Ex. 64, pp. 841, 846.) He also stated that he had coached youth soccer for approximately six years and never received "any complaints about" inappropriate conduct with players. (*Id.*, p. 841.) Furthermore, the jury heard Mr. Luna's post-*Miranda* interview, in which he denied ever having "sex with an underage girl" and stated that he did not "fantasize about young kids." (Doc. 12-3, Ex. 63, pp. 640, 647.) In sum, Mr. Luna cannot show that the trial court's evidentiary rulings "affect[ed] the fundamental fairness of the trial." *Mills*, 161 F.3d at 1289.

### D.    Ground Three

Mr. Luna contends that the charges against him should have been dismissed because "the prosecution did not present any proof of predisposition" to rebut his entrapment defense. (Doc. 1-1, pp. 36-37.) Mr. Luna argues that he "amply met his minimal burden of presenting evidence sufficient for a jury to find inducement and lack of predisposition by a preponderance of the evidence." (*Id.*, p. 37.) Thus, according to Mr. Luna, the State was required to present evidence of his predisposition to commit the charged offenses. Because the State allegedly presented no such

evidence, it failed to "prove an element of the offense beyond a reasonable doubt," and double jeopardy bars any retrial. (*Id.*, p. 36.)

Respondent correctly contends that Mr. Luna failed to exhaust this claim. On direct appeal, Mr. Luna argued that his convictions should be "vacat[ed]" because the State "exerted no effort to show predisposition." (Doc. 12-1, Ex. 39, pp. 32-33.) But Mr. Luna did not argue that, as a result of this alleged failure of proof, his federal constitutional rights were violated. "Under these circumstances, [Mr. Luna] cannot be said to have fairly apprised the state court of his federal . . . claim." *Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 459 (11th Cir. 2015). Because Mr. Luna cannot return to state court to present his unexhausted claim in a second, untimely direct appeal, Ground Three is procedurally defaulted. And because Mr. Luna has not shown that an exception applies to overcome the default, Ground Three is barred from federal habeas review.

Even if Mr. Luna had exhausted this claim, he would not be entitled to relief. Before trial, Mr. Luna moved to dismiss the charges against him based on entrapment. The trial court denied the motion, holding that Mr. Luna failed to establish entrapment as a matter of law because he was "not induced" to commit the offenses. (Doc. 12-1, Ex. 14, p. 3.) As the trial court explained, Mr. Luna claimed that "the inducement arose from the [detective's] fraudulent representation and the 'bait and switch tactic' involving the initial advertisement, posted in an adult-only portion of Craigslist." (*Id.*) The trial court rejected this argument. It reasoned that "inducement requires more than just evidence of a fraudulent representation by law enforcement." (*Id.*) Instead,

17

the trial court explained, a defendant must show that "the fraudulent representation created a 'substantial risk that an otherwise law-abiding citizen would commit an offense.'" (*Id.* (quoting *Cantrell v. State*, 132 So. 3d 931 (Fla. 1st DCA 2014).) The trial court ruled that Mr. Luna failed to make this showing because he "continued to correspond with the undercover detective" even after learning that she was "looking for some 'fun' for [her 11 year old daughter] that Disney can't provide." (*Id.*) The trial court also noted that Mr. Luna's "hesitations were based on the legal consequences, and [were] not based on engaging in sexual activity with a minor." (*Id.*) The trial court's ruling did not involve an unreasonable application of clearly established federal law, nor did it rest on an unreasonable determination of the facts. *See Senger v. State*, 200 So. 3d 137, 144 (Fla. 5th DCA 2016) (affirming denial of motion to dismiss based on entrapment because defendant's "responses to law enforcement's Craigslist advertisement were affirmative and arguably enthusiastic, as evidenced by his offers to actively participate in providing sexual teaching and guidance to what [he] believed was a fourteen-year-old girl").

At trial, Mr. Luna moved for a judgment of acquittal, arguing that he was entrapped as a matter of law because the State made "no showing of predisposition." (Doc. 12-3, Ex. 63, pp. 766, 779-80.) Post-verdict, Mr. Luna moved for a new trial, renewing his argument that the State failed to "show that [he] had any predisposition." (Doc. 12-1, Ex. 28, pp. 5-6.) The trial court denied both motions without any explanation. (*Id.*, Ex. 32; Doc. 12-4, Ex. 64, p. 1085.) Thus, to obtain relief, Mr. Luna must show that "there was no reasonable basis for the decision of the [trial court] to

18

deny his claim." *Tarleton v. Sec'y, Fla. Dep't of Corr.*, 5 F.4th 1278, 1291 (11th Cir. 2021); *see also Richter*, 562 U.S. at 98 ("Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.").

Mr. Luna has not made the required showing. As noted above, the trial court denied Mr. Luna's request for an entrapment instruction. It based that decision on Mr. Luna's "theory of defense," which was that "he didn't commit the crimes charged." (Doc. 12-4, Ex. 64, p. 944.) Because the entrapment defense was not presented to the jury, the State's alleged failure to produce evidence of predisposition did not require a judgment of acquittal or a new trial. *Cf. Munoz v. State*, 629 So. 2d 90, 99 (Fla. 1993) ("In rebutting the defendant's evidence of lack of predisposition, the prosecution may make an appropriate and searching inquiry into the conduct of the accused and present evidence of the accused's prior criminal history, *even though such evidence is normally inadmissible*." (emphasis added)). Thus, Mr. Luna has not shown that the denial of his entrapment-related motions involved an unreasonable application of clearly established federal law or rested on an unreasonable determination of the facts.

### E.   Ground Four

Mr. Luna argues that the Second District Court of Appeal ("Second DCA") violated his rights to due process and equal protection by refusing to "issue a written opinion or certify a conflict." (Doc. 1-1, p. 39.) As noted above, the Second DCA *per curiam* affirmed Mr. Luna's convictions and sentences. Mr. Luna contends that, by declining to issue a written opinion, the Second DCA prevented him from seeking

review with the Florida Supreme Court. As a result, the Florida Supreme Court was "without jurisdiction" to resolve the "obvious split among the district courts of appeal" as to whether a defendant forfeits an entrapment defense by claiming that he lacked the mental state required for the charged offense.[6] (*Id.*, pp. 39-42.)

Respondent argues that this claim is unexhausted to the extent it rests on the denial of equal protection. The Court need not resolve this issue because, even assuming that Mr. Luna fully exhausted this claim, it fails on the merits. Mr. Luna has not cited—and this Court cannot locate—any Supreme Court precedent requiring an intermediate appellate court to issue a written opinion on direct appeal from a criminal conviction. To the contrary, the Supreme Court has held that a state-court decision receives AEDPA deference even if there is no "opinion . . . explaining the state court's reasoning." *Richter*, 562 U.S. at 98; *see also Dishman v. Jones*, No. 4:12-cv-485-WS, 2015 WL 3952670, at *8 (N.D. Fla. June 29, 2015) ("[T]o the extent [petitioner] seeks relief only because the First DCA *per curiam* affirmed [his] direct appeal, without a written opinion, this ground does not state a federal claim.").

Likewise, Mr. Luna has not cited any authority suggesting that due process or equal protection is violated if a defendant is unable to obtain discretionary review from a state's highest court. According to Mr. Luna, "[t]he fact that a citizen in one judicial district is subject to a rule different from that applied to an identically-situated

---

[6] "[T]he Supreme Court of Florida lacks jurisdiction to review *per curiam* decisions of the several district courts of appeal . . . rendered without opinion." *Jackson v. State*, 926 So. 2d 1262, 1265 (Fla. 2006).

defendant in another judicial district is inconsistent with the Constitution's guarantees of equal protection and due process." (Doc. 1-1, p. 39.) But the mere existence of a split of authority among Florida's District Courts of Appeal does not violate the federal constitution. *Cf. Brown v. Berkebile*, 572 F. App'x 605, 608 (10th Cir. 2014) ("[A] circuit split does not deny [plaintiff] equal protection."). And, contrary to Mr. Luna's assertion, *Bush v. Gore* does not clearly establish that the Second DCA violated his constitutional rights by issuing a *per curiam* affirmance. *See Bush v. Gore*, 531 U.S. 98, 109 (2000) ("Our consideration is limited to the present circumstances, for the problem of equal protection in election processes generally presents many complexities.").

### F.   Ground Five

Finally, Mr. Luna contends that his rights to due process and equal protection were violated because he was "entrapped as a matter of law." (Doc. 1-1, p. 44.) He argues that the online sting operation "began as a virtue test," "dangl[ing] both legal and illegal bait, so that [his] appearance at the designated house did not indicate which type of bait he was responding to." (*Id.* p. 46 (citation omitted).)

Respondent contends that Mr. Luna failed to exhaust Ground Five. The Court need not decide this issue. Even if Mr. Luna had properly exhausted Ground Five, he would not be entitled to relief because the claim fails on the merits. As an initial matter, Mr. Luna repeats his argument that he "was entitled to dismissal of the charges because the prosecution had come up with no evidence of predisposition on his part." (*Id.*, p. 47 (emphasis omitted).) For the reasons explained above, Mr. Luna has not

shown that the State's alleged failure to produce evidence of predisposition warrants federal habeas relief.

Mr. Luna separately argues that his federal constitutional rights were violated because he was the victim of "objective entrapment." (*Id.*, pp. 45-46.) Two theories of entrapment, objective and subjective, are available under Florida law. *Jimenez v. State*, 993 So. 2d 553, 555 (Fla. 2d DCA 2008). As discussed above, "subjective entrapment focuses on inducement of the accused based on an apparent lack of predisposition to commit the offense." *Hall v. State*, 326 So. 3d 1188, 1189 (Fla. 1st DCA 2021). Objective entrapment, by contrast, "focuses on the conduct of law enforcement. [It] operates as a bar to prosecution in those instances where the government's conduct so offends decency or a sense of justice that it amounts to a denial of due process." *Davis v. State*, 937 So. 2d 300, 302 (Fla. 4th DCA 2006). Objective entrapment occurs when "even a predisposed defendant's due process rights are violated." *Gennette v. State*, 124 So. 3d 273, 277 n.5 (Fla. 1st DCA 2013).

Although Florida law recognizes a defense of objective entrapment, the Supreme Court has never "squarely established" a federal constitutional right to dismissal of criminal charges based on objective entrapment. *Knowles*, 556 U.S. at 122. As noted above, "'clearly established Federal law' for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *Woodall*, 572 U.S. at 419. Fifty years ago, the Supreme Court noted in dicta that it "may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the

government from invoking judicial processes to obtain a conviction." *Russell*, 411 U.S. at 431-32. Since then, the "outrageous government conduct" defense has "never succeeded . . . in the Supreme Court." *United States v. Cannon*, 987 F.3d 924, 941 (11th Cir. 2021); *see also United States v. Dillard*, No. 22-11704, 2023 WL 28981, at *5 (11th Cir. Jan. 4, 2023) ("[O]utrageous conduct is only a *potential* defense in this circuit because neither the Supreme Court nor this Court has ever found it to actually apply and barred the prosecution of any case based on it.").

Accordingly, there is no "clearly established federal law stating that there is a constitutional right to dismiss a case based on objective entrapment." *Lewis v. Sec'y, Fla. Dep't of Corr.*, No. 3:17-cv-468-MMH-JBT, 2020 WL 2766171, at *11 (M.D. Fla. May 28, 2020); *see also McFadden v. Doc & Fla. Att'y Gen.*, No. 2:14-cv-128-SPC-MRM, 2016 WL 6822451, at *6 (M.D. Fla. Nov. 18, 2016) ("Petitioner cannot now rely on [] dicta in [Supreme Court decisions] to support his assertion that the trial court violated his federal due process rights by rejecting his 'objective entrapment' defense."). For that reason, Mr. Luna is not entitled to relief on Ground Five.[7]

Accordingly, the Court **ORDERS**:

1. Mr. Luna's petition (Doc. 1) is **DENIED**.

---

[7] Mr. Luna seeks an evidentiary hearing on his claims. The Court concludes that an evidentiary hearing is not warranted. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (stating that "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing"); *Landers v. Warden*, 776 F.3d 1288, 1295 (11th Cir. 2015) ("[B]efore a habeas petitioner may be entitled to a federal evidentiary hearing on a claim that has been adjudicated by the state court, he must demonstrate a clearly established federal-law error or an unreasonable determination of fact on the part of the state court, based solely on the state court record.").

2. The **CLERK** shall enter judgment accordingly and is directed to **CLOSE** this case.

3. Mr. Luna is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To obtain a certificate of appealability, Mr. Luna must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Mr. Luna has not made the requisite showing. Because Mr. Luna is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida, on March 10, 2023.

**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**